IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| ORLANDO ZAPATA, on behalf of himself and all others similarly situated,<br>　　Plaintiff,<br><br>v.<br><br>CANINE FRIENDLY COALITION, INC. d/b/a DESERT STAR HOME HEALTH, and ROBERTO HERRERA, individually,<br>　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | EP-17-CV-131-PRM |

**MEMORANDUM OPINION AND ORDER**
**GRANTING CONDITIONAL CERTIFICATION**

On this day, the Court considered Plaintiff Orlando Zapata's [hereinafter "Plaintiff"] "Motion for Conditional Certification" (ECF No. 20) [hereinafter "Motion"], filed on September 29, 2017, and Defendant Canine Friendly Coalition, Inc.'s [hereinafter "Defendant"] "Response to Plaintiff's Motion for Conditional Certification" (ECF No. 23) [hereinafter "Response"], filed on October 31, 2017, in the above-captioned cause. After due consideration, the Court is of the opinion that Plaintiff's Motion should be granted for the reasons that follow.

## I. BACKGROUND

Plaintiff was a licensed vocational nurse ("LVN") who worked for Defendant from "approximately 2012 through July 28, 2016." Mot. Ex. A, Decl. of Orlando Zapata [hereinafter "Zapata Declaration"]. As an LVN, Plaintiff provided "nursing care to patients at their places of residence." *Id.* Plaintiff claims that his various duties included "providing care, driving between patient's houses, and . . . preparing nurses['] notes[.]" *Id.* He claims that these activities "frequently" caused him to work over forty hours per week, but alleges that Defendant did not pay him overtime wages for any time in excess of forty hours. *Id.*

Accordingly, Plaintiff brought this action on behalf of himself and other similarly situated LVNs pursuant to the Fair Labor Standards Act ("FLSA") to recover for inadequately compensated overtime hours. Mot. 1. Specifically, Plaintiff seeks to join all LVNs that worked for Defendant over a three-year period immediately preceding this suit that "were subjected to the same or similar illegal pay practices for similar work." *Id.* at 3. According to Defendant's "First Set of Pre-Certification Interrogatories," attached to Plaintiff's Motion as Exhibit B [hereinafter

"Interrogatory Responses"], there are at least nine other such LVNs who worked during the three-year class period.

## II. LEGAL STANDARD

The FLSA's collective action provision allows one or more employees to bring an action for overtime compensation on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).  The Fifth Circuit has not set a legal standard for class certification pursuant to the FLSA.  *Portillo v. Permanent Workers, L.L.C.*, 662 F. App'x 277, 279 (5th Cir. 2016) (unpublished) (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1216 (5th Cir. 1995)).  However, many district courts in the Western District of Texas use the *Lusardi* two-tiered approach to determine whether to certify a collective action under the FLSA.  *See, e.g.*, *Wilson v. Anderson Perforating, Ltd.*, No. SA-13-CV-148-XR, 2013 WL 3356046, at *1 (W.D. Tex. July 3, 2013) (citing *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 359 (D.N.J. 1987)); *Castillo v. Hernandez*, No. EP-10-CV-247-KC, 2010 WL 4595811, at *3 (W.D. Tex. Nov. 4, 2010).

The *Lusardi* two-tiered approach involves a preliminary decision regarding whether to send notice of the lawsuit to putative class members and give them a chance to "opt-in" to the litigation.  *Anderson*

*Perforating*, 2013 WL 3356046 at *1. Courts should conditionally certify the FLSA class where there are "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Castillo*, 2010 WL 4595811 at *4. This standard has been characterized as "not particularly stringent," "fairly lenient," and "not heavy." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008). This "low bar [ ] typically results in conditional certification." *Snively v. Peak Pressure Control, LLC*, 174 F. Supp. 3d 953, 959 (W.D. Tex. 2016). The decision to create an opt-in class "remains soundly within the discretion of the district court." *Anderson Perforating,* 2013 WL 3356046 at *1.

If conditional certification is granted, the case proceeds as a representative action. *Id.* Upon the completion of discovery, the defendant typically files a motion to decertify the class, and the Court must then determine whether the putative class members are similarly situated. *Id.* "If so, then the representative action may proceed; if not, then the class should be decertified, the opt-in plaintiffs dismissed, and the class representatives should be allowed to proceed on their individual claims." *Id.* For purposes of this Order, the Court must only address the conditional certification tier of the two-tiered approach.

## III. ANALYSIS

In determining whether Plaintiff has made "substantial allegations" regarding the putative class and existence of an unlawful policy, the Court need only consider Plaintiff's pleadings and affidavits. *Anderson Perforating,* 2013 WL 3356046 at *1. To determine whether the allegations are substantial, courts may additionally consider whether "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit." *Castillo*, 2010 WL 4595811 at *4 (quoting *Tolentino v. C & J Spec-Rent Servs. Inc.*, 716 F. Supp. 2d 642, 647 (S.D. Tex. 2010)).

### a.  Whether There is a Reasonable Basis for Crediting Plaintiff's Assertions

Plaintiff alleges that he and other LVNs were required to perform work in excess of forty hours per week. He further alleges that Defendant did not compensate him adequately for this work pursuant to the FLSA's overtime pay provisions. As evidence in support of these allegations, Plaintiff submits two documents. The first document is the Zapata Declaration. In the Declaration, Plaintiff describes his personal

experience working for Defendant and his knowledge of how other similar employees were treated. Zapata Decl. The second document is Defendant's Interrogatory Responses. In these responses, Defendant confirms that Plaintiff was its employee and that it paid other LVNs on a "per job" basis, similar to how it paid Plaintiff. Interrog. Resp. 3–7.

Based on these two documents, the Court finds a reasonable basis for Plaintiff's claim that Defendant inadequately compensated certain individuals for the overtime hours they worked. Plaintiff provides a sworn affidavit claiming he worked in excess of forty hours a week in order to complete certain activities related to the care he provided as a home nurse. However, Plaintiff claims he was not paid overtime wages for the period he worked in excess of forty hours. Defendant has confirmed aspects of these allegations. Defendant confirms that Plaintiff was an employee and that Defendant compensates its employees on a "per job" rather than hourly basis.[1]  Defendant also

---

[1] The Court notes that the Interrogatory Responses are contradictory. Defendant provides information regarding how employees generally track their *hours* but also claims that it pays employees "by each job at a standard rate per job." Interrog. Resp. 7. How exactly the hourly and flat-rate-per-job payment systems work in unison is unclear. However, for purposes of deciding conditional certification, Defendant sufficiently

states that it only pays LVNs for "one hour per visit" because one hour is always "sufficient time for LVNs to complete all their job duties for each patient." Resp. 3–4. Based on Defendant's policy of paying one hour per visit, and Plaintiff's claim that at least some visits required more than an hour of work, a reasonable basis exists for crediting Plaintiff's assertions.

Defendant makes multiple arguments challenging the bases for crediting Plaintiff's assertions. First, it argues that Plaintiff has failed to identify any of Defendant's decisions, policies, or plans that violate the FLSA. However, Plaintiff need not identify an explicit, official policy to substantially allege a violation of the FLSA. *See Vega v. Point Sec., LLC*, No. A-17-CV-049-LY, 2017 WL 4023289, at *3 (W.D. Tex. Sept. 13, 2017) (holding that allegations of a per-job payment structure that resulted in underpayment were sufficient to support a reasonable basis for a FLSA collective action certification). Instead, at this stage, Plaintiff must merely proffer a reasonable basis for crediting his assertions that he and other LVNs were underpaid. Here, Defendant has admitted to its practice or policy of paying employees one hour's

---

corroborates that it compensates employees on a per-job basis, which lends credibility to Plaintiff's allegations.

wages for each patient visit.  Resp. 3.  Plaintiff claims that this policy led to his underpayment for the overtime hours he worked.  Mot. 3.  This is sufficient evidence to credit the assertions that Defendant's policy did not and/or does not conform to the FLSA.

Second, Defendant attacks Plaintiff's claims by providing its own affidavits from current and former LVNs that contain statements directly contradicting Plaintiff's.  Specifically, Defendant provides four affidavits from one current and three former LVNs who all make a variation of the following statement:  "I was able to complete all of my job duties for each patient in no more than one hour . . . . I never worked more than forty hours per week for [Defendant.]"  *See* Resp. Ex. 1, Affidavit of Bianca Tarin.

These four counter-affidavits do not necessarily discredit Plaintiff's affidavit or militate against conditional certification.  First, none of Defendant's affidavits denies that some LVNs may have habitually worked more than forty hours, as Plaintiff claims.  Instead, they confirm only that those individual affiants could always complete their job duties in no more than one hour and never worked over forty hours.  *See* Resp. Exs. 1–4, Affidavits of Bianca Tarin, Alice Araujo, Cassandra Solano, and Eva Urias.  Thus, none of the four affiants'

8

statements contradicts Plaintiff's assertion that some "other LVNs were frequently working more than forty hours in a week." Zapata Decl. Second, these affidavits may be useful in shaping the putative class. However, for the purposes of deciding whether Plaintiff can send notice to other putative plaintiffs, the fact that some LVNs claim that they were paid adequate wages does not warrant denying Plaintiff the opportunity to join other putative plaintiffs who may not have been paid sufficiently.

Finally, Defendant criticizes the Zapata Declaration as "conclusory" and lacking in personal knowledge of the other LVNs' specific situations. Resp. 8. However, for conditional certification, "[a]ll that courts require is that the allegations in the declarations are based on personal knowledge." *Snively v. Peak Pressure Control, LLC*, 174 F. Supp. 3d 953, 958–59 (W.D. Tex. 2016) (citing *Lee v. Metrocare Servs.*, 980 F. Supp. 2d 754, 762 (N.D. Tex. 2013)). "Personal knowledge can include inferences and opinions, so long as they are grounded in personal observation and experiences." *Id.* (citing *United States v. Cantu*, 167 F.3d 198, 204 (5th Cir. 1999). Here, Zapata specifically states that he spoke in person and over the phone with other LVNs during his employment. Zapata Decl. Further, Zapata claims that he

9

sometimes worked in "quality control" for Defendant and, as part of his duties, would review other LVNs' "notes and schedules." *Id.* Based on those conversations and that work experience, Plaintiff claims to have personal knowledge that other LVNs worked in excess of forty hours a week. *Id.* At this stage, this is a sufficient allegation of personal knowledge to warrant conditional certification.

### b. Whether There are Other Similarly Situated Individuals

Plaintiff avers in his affidavit that other former LVNs were subject to conditions similar to his. Zapata Decl. Specifically, he believes—based on conversations with other LVNs and on his review of other LVNs' notes and schedules while he was employed—that "LVNs were frequently working more than forty hours in a week." *Id.*

"Potential class members are considered similarly situated to the named plaintiff if they are similarly situated in terms of job requirements and similarly situated in terms of payment provisions." *Jones v. Cretic Energy Servs., LLC*, 149 F. Supp. 3d 761, 770 (S.D. Tex. 2015) (quoting *Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 862 (S.D. Tex. 2012). Here, Zapata asserts that other LVNs "performed the same duties I did[.]" Zapata Decl. Defendant does not appear to

dispute that LVNs have substantially similar responsibilities. In fact, three out of the four affidavits submitted by other LVNs confirm that their "job duties included . . . providing nursing care to patients at their place of residence and charting and annotating such care." *See, e.g.*, Resp. Ex. 1, Decl. of Bianca Tarin. These duties are practically identical to Plaintiff's alleged duties. Mot. 3. Further, Defendant confirms in its Interrogatory Responses that its compensation structure is the same for all of its LVN employees. *See* Mot. Ex. B at 7 ("Defendant pays all of its LVN employees by each job at a standard rate per job."). Thus, the Court concludes that the putative plaintiffs are similarly situated.

Defendant counters that various differences between each LVN make "a collective action problematic and inappropriate." Resp. 8. These differences include the specific number of hours of work each LVN performed, the dates they performed that work, the number of patients they saw, the LVNs' job duties, and the time it took to attend to patients. *Id.* at 7–8. Defendant claims these facts are "unique and specific to each LVN [ ] such that individualized inquiries will predominate over common issues[.]" *Id.* at 7.

11

This argument also fails.  While the facts Defendant mentions may become relevant later, the Court will consider those facts if and when the Court performs a deeper analysis at the second stage of certification.  For purposes of conditional certification, it is only necessary that Plaintiff make substantial allegations that other similarly situated plaintiffs exist.  *See Yair Granados v. Hinojosa*, 219 F. Supp. 3d 582, 585 (W.D. Tex. 2016) ("At th[e conditional certification] stage, courts generally refuse to consider a defendant's arguments on the merits.").

### c.  Whether Other Individuals Want to Opt In

Finally, Plaintiff claims that he believes, based on prior conversations with other LVNs, "that if current and/or former employees could opt into this lawsuit, they would do so."  Zapata Decl.  However, as of the time of this Order, Plaintiff has provided no other evidence besides his word that other putative plaintiffs may join this litigation.  Despite the thin evidence at this point supporting Plaintiff's claim that others desire to join the litigation, Plaintiff's statement is sufficient given the lenient standard for conditional FLSA certification.  Further, many district courts do not require an affirmative showing at this stage of other putative plaintiffs that wish to opt in.  *See, e.g.*, *Yair*

12

*Granados v. Hinojosa*, 219 F. Supp. 3d 582, 585 (W.D. Tex. 2016) (not requiring the plaintiffs to make any affirmative showing that other potential plaintiffs would opt in to the litigation); *Esparza v. C&J Energy Servs., Inc.*, No. 5:15-CV-850-DAE, 2016 WL 1737147, at *5 (W.D. Tex. May 2, 2016) ("Several district courts in Texas, including this Court, have rejected the third, non-statutory requirement of the conditional certification test, which requires the party seeking conditional certification to demonstrate that there are others who wish to join the suit."); *Mateos v. Select Energy Servs., LLC*, 977 F. Supp. 2d 640, 643 (W.D. Tex. 2013) (also not requiring the plaintiffs to satisfy the third element).

    In light of these considerations, the Court concludes that Plaintiff's claim in his affidavit is sufficient to satisfy this prong. *See Sandoval v. Carrco Painting Contractors*, No. MO:16-CV-00159-DC, 2016 WL 8674067, at *3 (W.D. Tex. Oct. 11, 2016), *on reconsideration in part*, No. MO:16-CV-00159-DC, 2016 WL 8674068 (W.D. Tex. Oct. 24, 2016) (concluding that the plaintiff's affidavit and one additional affidavit claiming that other employees would be interested in joining the litigation were sufficient to conclude that other putative plaintiffs would, in fact, be interested).

### d. Notice to the Putative Class

Attached to Plaintiff's Motion are two additional documents: a proposed notice to potential class members (Mot. Ex. C) and a proposed consent form that putative class members can sign, which designates Plaintiff Zapata as the "Representative Plaintiff" and explains the class members' rights and responsibilities (Mot. Ex. D). Additionally, Plaintiff proposes various deadlines regarding notification and the opt-in period. Mot. 9–10. Defendant objects to aspects of Plaintiff's proposed notification methodology and the proposed notice schedule.

Rather than rule on the objections at this time, the Court will adopt the approach of other district courts and order the parties to meet and confer regarding disputes pertaining to the notice process. *See, e.g.*, *Mateos v. Select Energy Servs.*, LLC, 977 F. Supp. 2d 640, 646 (W.D. Tex. 2013). After the conference, the parties should submit joint proposed notice and consent forms, in addition to a proposed timeline for the notice period, for the Court's consideration. If the parties continue to disagree on the content of the forms or the parameters of the notice period, the parties should notify the Court of any such objections along with the other materials they submit.

## IV. CONCLUSION

Accordingly, the Court **CONDITIONALLY CERTIFIES** a collective action under the Fair Labor Standards Act, 29 U.S.C. § 216(b), comprised of all Licensed Vocational Nurses ("LVNs") providing patient care who worked for Canine Friendly Coalition d/b/a Desert Start Home Health during the relevant time period beginning three years before the date notice is sent.

Additionally, **IT IS ORDERED** that within **14 days** of the date of this Order, the parties are required to meet and confer and submit joint proposed notice and consent forms, as well as a joint proposed timeline for the notice period, for the Court's consideration.

**SIGNED** this **16th day** of **January, 2018**.

_____
**PHILIP R. MARTINEZ
UNITED STATES DISTRICT JUDGE**